IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MA LEG PARTNERS 1, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | CIVIL ACTION NO._____ |
| | § | |
| CITY OF DALLAS, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE U.S. DISTRICT COURT JUDGE:

MA LEG PARTNERS 1 files this Complaint against the City of Dallas (the "City" or "Defendant"), and in support thereof shows the Court as follows:

## I. PRELIMINARY STATEMENT.

1.     The purpose of Chapter 27 in the Dallas City Code is to establish and maintain minimum property standards in order to preserve the City's residential and non-residential structures and thereby protect the citizenry's health, safety, morals, and welfare.[1] To accomplish that purpose the ordinance prescribes regulatory requirements for owning and operating single tenant and multi-tenant dwelling unit rental or condominium properties.[2] The City's authority to regulate property owners' business activity in order to protect the citizenry's health and safety is not in dispute. Disputed here is the nature and extent of such regulation as it impacts property owners' rights.

---

[1] The City of Dallas substantially amended Dallas City Code Chapter 27, now titled "Minimum Property Standards," effective January 1, 2017. A true and correct copy of Chapter 27, as amended, is attached as exhibit A. Specific provisions in Chapter 27 are referred to herein as "section" or "sec."

[2] Chapter 27's registration requirements for multifamily dwelling rental or condominium properties are not at issue in this Complaint.

2. Requiring property owners to "register" a rental property with the City can properly be a means for gathering housing data, monitoring and evaluating housing stock, and enforcing health and safety standards for that housing. However, Chapter 27's multi-document registration is flawed by its requirement that property owners provide constitutionally protected private information as a pre-condition to leasing their property. When the required information is in the property owner's business records—for example, financing or insurance data—it is entitled to *Fourth Amendment* privacy protection. Requiring such information as part of the registration documents is an infringement on the property owner's rights in a manner not tied to Chapter 27's purpose of protecting the citizenry's health and safety. Similarly, if the data sought pertains to individuals who own the property-owning entity rather than to the entity itself, a rational connection is missing between the ordinance's purpose and the government's actions pursuing that purpose.

3. Chapter 27 has a legitimate purpose in enforcing health and safety standards for rental housing by inspections and other enforcement procedures. However, the inspection process as implemented is flawed by inconsistencies and inequities, which violate the property owner's *Fifth* and *Fourteenth Amendment* due process rights as well as *Fourteenth Amendment* right to equal protection.

4. Three different sections in Chapter 27 allow the City to seek a warrant. But each of those sections, after speaking the word "warrant," says nothing about how, where, and when the City must seek the warrant, or what participation the property owner is permitted in the process. Simply calling for a warrant without specifying procedures for issuance of the warrant cannot constitute constitutionally mandated precompliance review.

5.     Further, by providing that violations can be civil and/or criminal but without specifying criteria, guidelines, or due process for when a violation is one or the other (or perhaps both), Chapter 27 produces an unpredictable, inequitable, and at times excessively punitive enforcement regime. This lack of focus allows minor violations to be prosecuted as criminal, thereby creating disproportionately dire risks for property owners. The punitiveness of such prosecution is enhanced by defining a violation as occurring one day at a time, thereby imposing a fine for each day the violation persists. The result, predictably, is fines calculated in onerous dollar amounts for minor violations.

6.     This lawsuit concerns these and other Chapter 27 provisions which violate the rights of rental property owners under the *First, Fourth, Fifth, Seventh, Eighth*, and *Fourteenth Amendments* of the U.S. Constitution, as well as other federal and state law provisions.

## II. PARTIES, JURISDICTION, AND VENUE.

7.     MA LEG PARTNERS 1, Plaintiff, is a Texas joint venture with its principal office located at 1521 North Glenville Drive, Richardson, Dallas County, Texas 75081. Plaintiff is in the business of owning and operating single tenant dwelling unit rental properties located in the City of Dallas, including 2422 Blythe Drive. Plaintiff's business is subject to Chapter 27.

8.     Defendant City of Dallas is a municipal corporation organized and existing under the laws of the State of Texas and located in this judicial district. The City can be served with process through its mayor, clerk, secretary, or treasurer at the City's offices, 1500 Marilla Street, Dallas, Dallas County, Texas 75201.

9.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This action arises under the *First, Fourth, Fifth, Seventh, Eighth,* and *Fourteenth Amendments* to the U.S. Constitution, and 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 2201, *et seq.*

10.    Venue is properly in this Court pursuant to 28 U.S.C. § 1391.

11.    All conditions precedent to the filing of this Complaint and the claims set forth herein have been performed, satisfied, waived, or have occurred.

12.    All actions by the City described herein have been under color of state law and have caused the deprivation of Plaintiff's rights protected by the U. S. and Texas Constitutions.

### III. FACTUAL BACKGROUND.

13.    Plaintiff incorporates by this reference all of the preceding paragraphs as if fully set forth herein.

A.    *CHAPTER 27'S FIRST PRINCIPLES.*

*Purpose.*

14.    On September 28, 2016, the Dallas City Council adopted ordinance number 30236 amending Chapter 27 of the Dallas City Code. The ordinance was published on October 1, 2016. Certain sections of the ordinance became effective immediately after passage and publication; all other sections became effective on January 1, 2017, and remain in effect.

15.    Chapter 27 makes certain legislative findings of fact as to the existence in the City of "structures used for human habitation and nonresidential purposes that are

substandard in structure and maintenance."[3] Other unsatisfactory conditions such as lack

of proper heating and overcrowding are identified as constituting "a menace to the health,

safety, morals, welfare, and reasonable comfort" of Dallas citizens.[4] These conditions "will

create slum and blighted areas requiring large scale clearance, if not remedied."[5] Further,

absent "corrective measures, such areas will experience a deterioration of social values,

a curtailment of investment and tax revenue, and an impairment of economic values."[6] To

address these issues Chapter 27 seeks the "establishment and maintenance of minimum

structural and environmental standards [that] are essential to prevention of blight and

decay and the safeguarding of public health, safety, morals, and welfare."[7]

16.     With those findings as predicate, section 27-2(a) states:

> The purpose of this chapter is to protect the health, safety,
> morals, and welfare of the citizens of the city of Dallas by
> establishing minimum standards applicable to residential and
> nonresidential structures. Minimum standards are established
> with respect to utilities, facilities, and other physical
> components essential to make structures safe, sanitary, and
> fit for human use and habitation.[8]

17.     Section 27-2(b) finds Chapter 27 "to be remedial and essential to the public

interest,"[9] and provides that, "All structures within the city on the effective date of this

chapter, or constructed thereafter, must comply with the provisions of this chapter."[10]

---

[3]   Sec. 27-1. This Complaint deals solely with single dwelling unit rental properties. *See* definition in note 11 *infra.*
[4]   *Id.*
[5]   *Id.*
[6]   *Id.*
[7]   *Id.*
[8]   Sec. 27-2(a).
[9]   Sec. 27-2(b)
[10]  Sec. 27-2(b)

B.     *REGISTRATION BY PROPERTY OWNERS*.

   *The Registration Process*.

   18.     Before a single dwelling unit[11] rental property is allowed to be "occupied or leased," the owner,[12] landlord,[13] or property manager[14] must submit a rental registration application[15] containing certain "true and correct information" on a form provided by the City.[16] Section 27-31(b) provides that a registration application "must be submitted before the owner leases the property . . . ." An owner who allows a property to be occupied or leased without first submitting an application commits an offense,[17] which may be prosecuted civilly or criminally.[18]

   19.     A registration fee must be paid when the application is submitted. On information and belief, the present annual registration fee is $43 per single dwelling unit rental property. MA LEG PARTNERS 1 does not know how the City uses the revenue collected for the registration fee.

---

[11]   "SINGLE DWELLING UNIT means a single family or duplex, as defined in the Dallas Development Code, as amended, or a condominium dwelling unit." Section 27-3(36). The Dallas Development Code defines "DWELLING UNIT" as "one or more rooms designed to be a single housekeeping unit to accommodate one family and containing one or more kitchens, one or more bathrooms, and one or more bedrooms." Dallas Development Code, sec. 51A-2.102(34) in the Dallas City Code.

[12]   "OWNER means a person who has ownership or title of real property,"—(A) "including but not limited to" in part "the holder of fee simple title," "a mortgagee," "the named grantee in the last recorded deed;" or (B) "the owner's representative with control over the property." Sec. 27-3(24).

[13]   "LANDLORD" is defined from Texas Property Code § 92.001(2) as "the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease." Sec. 27-3(18).

[14]   "PROPERTY MANAGER means a person who, for compensation, has managing control of real property, including an on-site manager of a building or structure." Sec. 27-3(29).

[15]   Sec. 27-30(a) and (c).

[16]   Sec. 27-32(a).

[17]   Sec. 27-30(a) and (c).

[18]   Sec. 27-4.

20.     A property's registration "expires one year after the registration date."[19] Registration is an annual event.[20] During the year, the registrant "shall keep the information contained in its registration application current and accurate," and "shall promptly notify the director[21] in writing" of any changes in the information previously provided."[22]

21.     For a single dwelling unit rental property,[23] section 27-32(a) lists twelve categories of information to be provided on the unsworn application submitted as part of the registration. Sec. 27-32(b) lists five items of additional information which the rental property owner must certify as true by affidavit submitted as part of the registration. The fifth item on the affidavit pertains to a third document—in addition to the application and the affidavit—to be submitted as part of the registration, attesting (i) that a recent self-inspection of the property by the owner or its agent has occurred, and (ii) to the property's interior and exterior condition in specified categories.[24]

22.     On or about September 12, 2018, MA LEG PARTNERS 1 received in the mail a Notice of Violation on which the spaces for the inspector's signature and the date (next to the signature) were blank. In the section titled "Work Must Be Completed Within 30 Days Or Citation May Be Issued," the box was checked which states: "Submit rental registration/annual renewal application (27-30)."[25] MA LEG PARTNERS 1 has not

---

[19] Sec. 27-31(c).
[20] Sec. 27-31(a).
[21] "DIRECTOR means the director of the department designated by the city manager to enforce and administer this chapter and includes representatives, agents, or department employees designated by the director. Sec. 27-3(10).
[22] Sec. 27-31(g).
[23] "RENTAL PROPERTY means a multitenant property or a single dwelling unit that is leased or rented to one or more persons other than the owner of the property, regardless of whether the lease or rental agreement is oral or written, or the compensation received by the lessor for the lease or rental of the property is in the form of money, services, or any other thing of value." Sec. 27-3(32).
[24] Sec. 27-32(b)(5).
[25] A true and correct copy of this Notice of Violation is attached as exhibit B.

registered the rental property identified in this Notice. The City has not issued a citation based on this Notice.

*The "Application" Required To Register.*[26]

23.     To register a rental property, as required by Chapter 27, a property owner must submit, among other documents, an application. MA LEG PARTNERS 1 contests certain requirements for that application, as set forth herein.

24.     Section 27-32(a)(1)(D):

> (D)  the holder of any deed of trust or mortgage lien on the rental property being registered;

A deed of trust or mortgage lien, if recorded, is publicly available. If providing the holder named in the recorded document satisfies this requirement, then this information request is unobjectionable. However, deeds of trust and mortgages can be transferred to successive holders by unrecorded instruments. And, since the lending transaction itself is frequently "serviced" by a firm that is not the holder, the property owner (borrower) may only know the servicer. (Adding to the confusion here, the term "owner" is defined in section 27-3(24) to include "a mortgagee.") This information is well within a property owner's expectation of privacy. Further, the mortgage information required by section 27-32(a)(1)(D) lacks any rational nexus to Chapter 27's purpose and is far removed from the enforcement necessities of Chapter 27.

---

[26] A true and correct copy of the Single Family Rental Registration Program Guide, as presently posted on the City's website, is attached as exhibit C. The registration application itself is accessed online through a website portal.

25. Section 27-32(a)(1)(E):

> (E) any insurance carriers providing casualty insurance to the owner covering the rental property or condominium association being registered (and providing the applicable policy number(s));

Insurance policy information is not readily identifiable, especially for owners with multiple properties and with a given property's coverages assigned piecemeal to different policies. This business information is well within a property owner's privacy right, lacks any rational connection to Chapter 27's purpose and is far removed from the enforcement necessities of Chapter 27.

26. Section 27-32(a)(3):

> (3) . . . as well as the name and mailing address for each principal officer, director, general partner, trustee, manager, member, or other person charged with the operation, control, or management of the entity;

The requirement set forth in section 27-32(a)(3) calls for personal details of the individuals or firms that own and/or operate a property-owning entity, whereas Chapter 27's regulatory purview extends to the property-owning entity itself, not its owners. The City's proper concern is with the entity that owns the property, not with its owners. The personal information required by this section is within the property owner's right of privacy protection, lacks any nexus to Chapter 27's purpose, and is far removed from the enforcement necessities of Chapter 27. In addition, by requiring personal details about the individuals or entities that own the property-owning entity in order to complete the registration, Chapter 27 breaches Texas' well-established recognition of and respect for the corporate form.

27.    Section 27-32(a)(4):

> (4)  the location of business records pertaining to the rental
> property. . .required to be maintained by section 27-38 of this
> article;

Compelling disclosure of "the location of business records pertaining to the rental property"
is an enforcement device with no rational nexus to Chapter 27's regulatory purpose. As
for section 27-38 titled "Registrant's Records"—cross-referenced by section 27-32(a)(4)—
its requirement that the property owner "maintain at a single location within the city of
Dallas . . . the business records of the rental property . . . being registered" likewise lacks
any rational connection to Chapter 27's purpose and is an improper enhancement of the
City's enforcement tools for Chapter 27. Finally, compliance by an out-of-state property
owner is surely burdensome, perhaps impossible.

28.    Section 27-32(a)(5):

> (5)  the official recording information (e.g., volume, page, and
> county of recording) for the owner's deed and any other
> instruments evidencing ownership of the rental property . . . ;

"Official recording information" required by section 27-32(a)(5) obviously refers to matters
of public record. But, "any other instruments evidencing ownership of the rental property"
need not be public and can be numerous. As with section 27-32(a)(1)(D), existing public
information meets the City's informational needs to fulfill Chapter 27's regulatory purpose.
Any attempt to go behind that record violates the property owner's privacy rights, lacks
any rational connection to Chapter 27's purpose, and is far removed from the enforcement
necessities of Chapter 27.

29.   Section 27-32(a)(6):

(6)  a list of all businesses, whether for-profit or non-profit, operating out of the property and offering goods or services to persons residing at or visiting the property;

The information identified in section 27-32(a)(6) concerns tenant, not property owner, activity. Requiring this information from the property owner is an improper intrusion into the property owner's contractual dealings with the tenant. The City's regulation of this activity can and should be directed to the tenant and the business in question, not the property owner. Converting the property owner into an investigative agent for the City is an improper delegation of governmental authority.

*Business Records Requirements*.

30.   The registration application must also contain information as to "the location of business records pertaining to the rental property. . .required to be maintained by section 27-38. . . ."[27] Those records must be located "at a single location within the City of Dallas."[28] If the City's access to these records is refused by the registrant, then the City "may seek a court order to inspect the records."[29]

31.   Business records required by Sec. 27-38(b) include, in pertinent part:

(1) the current certificate of occupancy for the property,

(2) the deed evidencing ownership of the property,

(3) the current registration application filed for the property,

(4) swimming pool-related information,

(5) "leases . . . applicable to the property,"

---

[27]  Sec. 27-32(a)(4).
[28]  Sec. 27-38(a).
[29]  Sec. 27-38(a).

(6) the crime prevention addendum required by Code section 27-43 for each tenant of the property,

(7) . . . [pertains only to multi-family properties],

(8) "a record of each tenant complaint" with pertinent follow-up details, and

(9) a copy of the self-inspection report required by Code sections 27-32(b)(5)." [30]

32.     Section 27-38(b)'s burdensomeness is immediately apparent. The documents called for by (1), (3), and (9) are already in the City's possession, and the document called for by (2) is a matter of public record. The documents specified in (5), (6), and (8) are subject to the property owner's significant privacy interests which protect them from disclosure.

*Information and Records "Deemed Necessary."*

33.     Two sections, both dealing with information required for a property's registration, have the same deficiency. Per Section 27-32(a)(8), information for the registration application includes—

> (8) any additional information the registrant desires to include or that the director deems necessary to aid in the determination of whether the registration application will be deemed complete.

And, per section 27-38(b)(10), information contained in the property owner's business records must include—

> (10) any other records deemed necessary by the director for the administration and enforcement of this article.

---

[30] Sec. 27-38(b).

34.    Both sections are improperly vague from the perspectives of both the City's director and the registering property owner. If the director unilaterally adds a requirement for certain information, that amounts to an amendment of the ordinance without approval by the city council. Further, this vagueness is an open invitation to requiring property owners to produce privacy-protected information in violation of the *Fourth Amendment*, without any sort of pre-compliance review in violation of the *Fifth Amendment*. The "additional information" required from one property owner can be different from that required from other property owners in violation of the *Fourteenth Amendment*'s equal protection requirement.

35.    As for section 27-38(b)(10), this provision has the same deficiencies as section 27-32(a)(8). Not only is it wholly vague, it allows the director to in effect unilaterally amend Chapter 27 on a case-by-case basis, with heightened risk of differing requirements for different property owners in violation of the *Fourteenth Amendment's* equal protection requirement.

*The "Affidavit" Required to Register.*[31]

36.    Section 27-32(b) requires that, "in addition to the application containing the information enumerated above, the owner must also provide an affidavit certifying that the following statements are true." Those required statements are:

> (1) there are no outstanding and unpaid ad valorem taxes or city liens applicable to the rental property being registered;

> (2) operation of the rental property   as currently configured does not violate the city's zoning ordinance;

---

[31] A true and correct copy of the required affidavit, as presently posted on the City's website, is attached as exhibit D.

(3) [not applicable to single family rental property]; [32]

(4) if the rental property owner is an entity required to be registered or incorporated in its jurisdiction of formation, said entity is duly formed, existing, and in good standing with the jurisdiction; and

(5) if the rental property is a single dwelling unit rental property, the owner or the owner's agent inspected the interior and exterior of the rental property within the 60 days prior to the submission of the application and the results have been recorded on a form provided by the director.

37. The statements required by section 27-32(b) must be re-certified under oath in connection with each annual renewal of an application.[33]

38. Sections 27-32(b)(1), (2), and (4) require that the owner certify by affidavit to what is in essence a legal opinion regarding certain publicly available information, which the property owner is likely unqualified to assess or evaluate. The owner must also certify by that affidavit that the self-inspection by the property owner or its agent, as required by sec. 27-32(b)(5), occurred.[34]

39. The required self-inspection is of "the interior and exterior of the rental property." The results of that self-inspection are recorded on a form titled "Owner's Self-Inspection Checklist" provided by the City.[35] This form, submitted as part of the registration documentation, is separate from the affidavit required by sections 27-32(b)(1), (2), and (4).

---

[32] Section 27-32(b)(3) is not at issue here because it pertains to rental property that is multitenant or part of a condominium.

[33] Sec. 27-31(h) (In the application for renewal of a registration, "[t]he registrant shall also submit a new, current affidavit certifying the matters identified in subsection 27-32(b) of this article.").

[34] As noted in paragraph 30, section 27-32(b)(3) is inapplicable to this proceeding.

[35] A true and correct copy of the Owner's Self-Inspection Checklist is attached as exhibit E.

Further, the form is not sworn to; rather, the signature constitutes an attestation that the form's checklist is, in fact, "for the property located at _____."

40.     The self-inspection form has sections identified as interior, exterior, and general violations; and, within those sections there are entries for exterior topics, for example, roofs, gutters, handrails and guardrails, etc., and interior topics, for example, bedrooms, kitchen, etc. Boxes are checked (or not) regarding various aspects of each identified area, for example, that the interior walls and ceilings have "no holes, cracks, or loose surface materials."

41.     Not only does section 27-32(b)(5) provide no standards or criteria to be applied by the self-inspection, thereby effectively denying the property owner of *Fifth* and *Fourteenth Amendment* due process protection, it also assigns no significance for the self-inspection's results. This meaninglessness is further amplified by the fact that the inspector—that is, the property owner or its agent—is not required to be qualified for the task.

C.     *PROPERTY INSPECTIONS BY THE CITY*.

42.     Chapter 27's purpose "to protect the health, safety, morals, and welfare of the citizens of the city of Dallas" is to be achieved "by establishing minimum standards applicable to residential and nonresidential structures,"[36] and then enforcing those standards by a regime of City inspections spelled out in several sections of the ordinance.

43.     These City inspections combined with the City's broader program for code enforcement are directed to and premised upon enforcement of minimum property standards specified in section 27-11. The standards on their face are not objectionable

_____

[36] Sec. 27-2(a).

and generally align with similar provisions widely adopted by other municipalities. However, problems arise in Dallas because of uneven, inconsistent, unpredictable, and inequitable enforcement effected by the present City inspection regime. The consequence of such enforcement is to deprive property owners of their due process and equal protection rights under the *Fifth* and *Fourteenth Amendments*.

44.    The ordinance states explicitly that property inspection is "[f]or the purpose of ascertaining whether violations of this chapter or other city ordinances exist. . . ."[37] Section 27-5 titled "Inspection" and section 27-42 titled "Property Inspections; Inspection and Reinspection Fees" are the pertinent sections. Inspections pursuant to section 27-42 are in addition to inspections conducted pursuant to section 27-5.[38]

*The Inspection Process*.

45.    Section 27-5 provides:

(a) For the purpose of ascertaining whether violations of this chapter or other city ordinances exist, the director is authorized, at a reasonable time, to inspect:

(1) the exterior of a structure and premises that do not contain a structure; and

(2) the interior of a structure, if the owner, occupant, or person in control give his permission to the director.

(b) Nothing in this section limits the director's ability to seek and obtain an administrative search warrant authorizing an interior or exterior inspection of a structure or a vacant premises.

46.    A common practice of City inspectors when issuing a citation for violation of Chapter 27's minimum property standards is to note on the citation itself the section/sub-

---

[37] Sec. 27-5(a).
[38] Sec. 27-42(c).

section of Chapter 27 which states the applicable standard but without specifying where the violation exists on the property or in the structure. Unlike in some municipalities, Dallas code inspectors do not attach to the notice of violation a photo of the actual violation. This absence of informative notice creates significant hurdles for both effective communication between the City and the property owner, and prompt, efficient, less costly resolution of identifiable violations. It also deprives the property owner of adequate notice of violations and fair opportunity to cure. In contrast, interestingly, if the City determines that an application submitted to comply with section 27-30's registration requirement is "materially incorrect or misleading," then the City "shall promptly notify the registrant that the application is defective or incomplete and . . . *shall list the defects or missing items.*"[39]

47.     Another common practice of City inspectors is to issue a notice of violation to the property owner for a violation such as "trash put out early," which is obviously and only caused by the tenant. In most instances the fine for this violation is readily collectible from the tenant via the water bill for the property. The tenant is an independent actor from the landlord. The City can and should identify and pursue the violation's actual perpetrator.

48.     The City's inspection process creates a continuing catch-22 for property owners and inspectors alike. Inspection of and enforcement for a given property often involves multiple inspectors. As a result, the inspector who issues the initial notice is not required to be the inspector who determines if the violation has been cured. Further, each inspector's interpretation of what satisfies particular minimum property standard, for example, for plumbing or electrical, will differ in many instances from other inspectors. With such variances in code enforcement standards, not surprisingly the property owner

---

[39]  Sec. 27-33(c) (emphasis added).

can only guesstimate what actions will cure a particular violation and achieve code compliance for a given property. "Operating condition" may be definable[40] but applying that definition equitably is difficult. Even more painfully for the property owner, the penalty for a violation begins accruing from the date on the notice of violation, not the date the notice is received by the property owner.

49.     The provisions in section 27-42—Chapter 27's other inspection section— pertaining to single dwelling unit rental property are limited: (i) The City "shall conduct" an inspection of such a property "at least once every five years but not more frequently than once a year." And (ii), various inspection fees are set.

50.     This lack of specificity in the City's notice of violation vitiates any notion that the "notice" of violation in fact provides "notice." This deficiency is matched by various inspectors' inconsistent, disjointed application of the minimum property standards to the same property or across multiple properties. These problems in how the City conducts inspections reek of due process and equal protection failure for the property owner.

D.     _WARRANTS UNDER CHAPTER 27_.

51.     Three separate provisions in Chapter 27 authorize the City to seek a warrant in order to accomplish the ordinance's enforcement goals. None of them creates the requisite architecture for a warrant issuing process. Absent procedural details the word "warrant" is a mere nicety, devoid of the constitutional protections to which the property owner is entitled.

---

[40] "OPERATING CONDITION means free of leaks, safe, sanitary, structurally sound, and in good working order." Sec. 27-3(23).

52. The broadest warrant authorization is in section 27-3.1(c): "The code enforcement official has the power to obtain: (1) search warrants for the purpose of investigating a violation of a health and safety or nuisance abatement, including an urban nuisance, regulation, statute, or ordinance; . . . ." The purpose is valid but the section, as with much of chapter 27, lacks necessary details.

53. In addition to the owner, a property's "occupant[41] or the person[42] in control" is empowered pursuant to Section 27-5(a)(2) to grant permission for inspection of the property's interior, despite the fact that the occupant's leasehold interest does not preclude or extinguish the property owner's continuing interest in the property and concomitant right to deny permission for inspection. The result under this section is that while the owner is allowed to refuse permission for an inspection, the property's occupant or person in control can separately grant access and thereby waive the warrant requirement which the property owner intended to invoke. If inspection permission is not given, the City has the "ability to seek and obtain an administrative search warrant authorizing an interior or exterior inspection of a structure or a vacant premises" pursuant to section 27-5(b).

54. Chapter 27 also provides for a judicial remedy to compel inspection of a property owner's business records, as distinct from the property itself. Section 27-38(a) specifies that if the property owner "refuses to make these [business] records available for inspection by the director," then the City "may seek a court order to inspect the records."

55. None of these three separate warrant provisions contains even a single procedural detail: which court can issue the warrant; is a hearing required, and if so, on

---

[41] "OCCUPANT means a person who has possessory rights to and is actually in possession of a premise." Sec. 27-3(21).
[42] "PERSON means any natural person, corporation, organization, estate, trust, partnership, association, or other legal entity." Sec. 27-3(25).

how much prior notice, given to whom, by what means; and, what is the burden of proof to be met by the City. Without such procedural requirements, Chapter 27's warrant provisions do not constitute precompliance review, and thus do not provide due process protections guaranteed by the *Fifth* and *Fourteenth Amendments*.

E.    *CODE ENFORCEMENT REGIME*.

56.    Chapter 27's format is curious. The first substantive topic—found in section 27-4 even before the sections on registration, building standards, and inspections, which are the core of the ordinance's purpose—is identified as "violations" and "penalties," both civil and criminal.[43]

*Criminal Enforcement*.

57.    The terms "offense," "violation," and "penalty" are used almost interchangeably in section 27-4. For example, the first paragraph[44] of section 27-4(a) begins with the statement that violating a provision of Chapter 27—such as failure to register a property—is "an offense,"[45] and then spells out "criminal penalties" in the form of fines for committing an offense.[46] Following this, the architecture of section 27-4 interweaves criminal and civil violations and penalties in no apparent pattern. Section 27-4(b) is titled "Criminal penalties," whereas sections 27-4(a) and (c) through (i) are un-titled and deal with criminal and/or civil penalties.

58.    Absent from section 27-4 and Chapter 27 overall is a prescription for identifying when an offense will be civilly prosecuted, criminally prosecuted, or both. More

---

[43] Sec. 27-4.

[44] Section 27-4(a) is ladened with words of criminality, for example: "A person who violates a provision of this chapter, or who fails to perform an act required of him by this chapter, commits an offense. A person commits a separate offense each day during which a violation is committed, permitted, or continued."

[45] Sec. 27-4(a).

[46] Sec. 27-4(b).

fundamentally, also lacking is a stated rationale for why Chapter 27 violations can be, should be, or need be prosecuted as criminal acts when for the most part they are in essence civil wrongs, except to the extent they raise health or safety issues.

59.     Section 27-4 contains two intersecting provisions regarding criminal responsibility and personal liability. Section 27-4(g) assesses criminal responsibility on the property owner who "either personally or through an employee or agent allows the violation to exist."[47] The property owner's responsibility for the violation commences at its inception rather than for failing to "correct a violation" that has already occurred.[48] And, the property owner is responsible—for a fine, rather than for failing to cure the violation within a certain time period—even if an existing violation was unknown to or unidentifiable by the property owner.[49] As a result, the City can criminally enforce against the property owner certain violations which are obviously attributable only to the tenant—for example putting trash out early or keeping a junk motor vehicle on the property—and for which the property owner is unlikely to have the requisite "culpable mental state"[50] required by section 27-4(c). The result is that criminal responsibility can be assessed against the property owner, which is usually an entity; but personal liability is not assessed the individual owner(s) of the property-owning entity.

60.     In contrast to section 27-4(g), under section 27-4(h) an employee of a property-owing entity can be "personally liable for a violation of this chapter" if she does

---

[47] Section 27-4(g)(2).

[48] As originally adopted, Section 27-4(g) stated that, "A person commits an offense if he *fails to correct* a violation of this chapter in compliance with any order issued under this chapter that has become final."[48] (Emphasis added.)

[49] Section 27-4.

[50] Dallas City Code section 1-5.1, titled "Culpable Mental State" and incorporated in Chapter 27 by section 27-4(c), states: "The culpable mental state required for the commission of an offense under this chapter is governed by Section 1-5.1 of this code."

not provide to the City—"not later than the fifth calendar day after the date the citation is issued"—certain specified information about the property owner.[51] Whether such personal liability for the employee is criminal or civil remains unspecified in Chapter 27.

61.     So, while personal liability for violation of Chapter 27 does not attach to individuals who own a property-owning entity, the entity itself can be held "criminally responsible" for such violation.  Also under Chapter 27, the City can pin personal liability on a property owner's employee who fails or refuses to divulge information about the property owner (an entity or individual), even while that owner remains protected from personal liability by the shield of the property-owning entity's corporate form.

62.     The consequences to the property owner for violating Chapter 27 are often ill-matched to the violations at issue, extending even to creating a criminal record for the offender. If afflicted with a criminal penalty, the property owner runs a high risk for uninsurability or even breach of a loan covenant.

63.     By attaching "criminal responsibility" to what is in essence a civil wrong, and by attributing to a property owner culpability for an offense committed by a third party and unknown to that owner, Chapter 27 imposes an excessive penalty on property owners and violates the Constitution's prohibition of vague criminal laws.

64.     The penalty for a criminal offense under Chapter 27 "is punishable by a fine not to exceed $2,000,[52] with fines for the first conviction set at not less than $150 or not less than $500, depending upon the violation.[53] Fines are then doubled for the second

---

[51] Sec. 27-4(h).
[52] Sec. 27-4(b)(1).
[53] Sec. 27-4(b)(2)(A) and (B).

conviction of the same offense and trebled for the third conviction in any 24-month period.[54]

*Civil Enforcement*.

65.    Chapter 27 speaks in terms of offenses, which can be prosecuted as civil or criminal but offers no guidelines or criteria for the City's choice. Indeed, the City can impose a civil *and* a criminal penalty for the same violation in Sec. 27-4(d). Section 27-4(d) authorizes the City to bring a civil action for violating Chapter 27, "*in addition to imposing the criminal penalty prescribed in Subsection (b)*."[55] That civil action "may include, but is not limited to" a civil penalty up to $1,000 "*for each day during which the violation is committed, continued, or permitted*."[56] Chapter 27's threat of a fine up to $1,000 per day, for example for failure to register a rental property, is so disproportionate as to violate the *Eighth Amendment*.

66.    As an alternative to the criminal penalty provided for in section 27-4(b), "the city may impose administrative penalties, fees, and court costs in accordance with Article IV-b" of Chapter 27.[57] The "alternative administrative penalty range" for a civil offense under Article IV-b is the same as for a criminal offense under section 27-4(b).[58] How the City decides which section to utilize for civil prosecution—Sec. 27-4(d) or Sec. 27-4(i)—is not defined in Chapter 27.

---

[54] Sec. 27-4(b)(3).
[55] Sec. 27-4(d) (emphasis added).
[56] *Id.* (Emphasis added.)
[57] Sec. 27-4(i). Article IV-b is titled "Administrative Adjudication Procedure For Premises, Property, And Certain Other Violations." The authority for Article IV-b is identified as Section 54.044 of the Texas Local Government Code.
[58] *Id.*

*Crime Prevention Addendum for Lease*.

67.     Section 27-43 requires that the lease for a single dwelling unit rental property must include "a crime prevention addendum" signed by the tenant named in the lease and by the tenant who will occupy the property, if they are not the same.[59]

68.     For the signer(s) the addendum must disclose "name, date of birth, driver's license number,[60] and signature."[61]

69.     The signature(s) on the addendum "must be separate and apart from the signatures used to execute other provisions of the lease or rental agreement."[62]

70.     The addendum must state that the property owner "will initiate eviction proceedings if the tenant, or any guest or co-occupant of the tenant, engages in any criminal activity[63] on the premises of the rental property." [64]

71.     Thus, the property owner can be mandatorily recruited as the City's agent and compelled to evict a tenant. This can occur even if the tenant is in good standing under the lease, and regardless of proof (or not) that the tenant "engaged in" criminal activity.

72.     Since the crime prevention addendum must be signed and attached to the lease, its execution is a precondition to the property owner's pursuing its business activity of leasing property. Section 27-43 contains no details on what "engages in" actually means or who provides proof of the tenant's activity. The basis or rationale for recruiting the property owner as a quasi-enforcer for the City is not stated. And, under section 27-4 the

---

[59] See 27-43(b) and (c)(1).
[60] If the signer does not have a driver's license, then "the number on any other government-issued personal identification card containing a photograph of the person" is required. Sec. 27-43(c)(1).
[61] Sec 27-43(c)(1).
[62] Id.
[63] "Abatable criminal activity" is defined in sec. 27-43(d).
[64] Sec. 27-43(c)(2).

property owner can be criminally prosecuted for failure to comply with section 27-43. This is violative of the Constitution's prohibition of vague criminal laws.

*Required Emergency Response*.

73.     Section 27-39(a) titled "Required Emergency Response" repeats in its first section the requirement in section 27-32(a)(1)(B) to provide information for someone affiliated with the property to be contacted in the event of an emergency condition (as defined in both sections) on the property. The emergency condition can relate to the property ("burst pipe") or the tenant ("serious police incident").[65]

74.     Section 27-39(c) then requires that, "The owner of a rental property . . . or an authorized agent thereof, must arrive at the property within one hour after the contact person named in the registration application is notified by the city or emergency response personnel that an emergency condition has occurred on the property."

75.     Regardless of whether the tenant or the property itself creates the emergency condition, the property owner or its agent "must arrive at the property within one hour. . ." after being notified by the City. Unstated is what the property owner is then supposed to do, and at whose direction. This is an improper delegation of the City's authority in such emergencies.

76.     The rationale for this requirement is unexplained in section 27-39. As with other sections of Chapter 27, failure to comply with the emergency response section is an offense, perhaps criminal. Section 27-39 violates the Constitution's prohibition of vague criminal laws.

---

[65] "An emergency condition includes any fire, natural disaster, collapse hazard, burst pipe, lack of working utilities, serious police incident, or other condition that requires an immediate response to prevent harm to the property, the occupants of the property, or the public." Sec. 27-39(a).

*Jury Trial*.

77.     Chapter 27's enforce enforcement provisions are a web of intersecting duties, responsibilities, and liabilities. The ordinance lacks both minimal guidelines to inform the citizenry about prosecution of violations, and standards to prevent arbitrary enforcement. The capstone to these omissions is Chapter 27's failure to proclaim the property owner's right to a jury trial in both civil and criminal proceedings.

## IV. CAUSES OF ACTION

> *COUNT ONE*: Chapter 27 requires the property owner to submit publicly to the City, in connection with registration of a single dwelling unit rental property, an application containing certain business and personal information in violation of the property owner's *First, Fourth,* and *Fourteenth Amendments* rights to freedom of speech, privacy, and equal protection.

78.     Plaintiff incorporates by this reference all of the preceding paragraphs as if fully set forth herein.

79.     Chapter 27 requires that a fully compliant rental property registration must be submitted before a property can be occupied or leased.[66] Section 27-31(a) requires that "rental properties . . . must provide a complete registration to the director annually." An "owner of rental property," landlord, or property manager "commits an offense if he operates the rental property or otherwise allows a dwelling unit . . . to be occupied or leased without first submitting a rental registration application that fully complies with section 27-31. . . ."[67] Failure to comply subjects the property owner to the risk of civil or criminal prosecution.[68]

---

[66] Section 27-31(b): "A registration application for a rental property . . .must be submitted before the owner leases the property."
[67] Sec. 27-30(a) and (c).
[68] Sec. 27-4.

80.     Registration requires submission of three documents—an application, an affidavit, and a self-inspection form.

81.     The application requires per sec. 27-32(a) that a property owner provide, among other items, the following objectionable information:

(i) contact information for the holder of any deed of trust or mortgage lien on the property, sec. 27-32(a)(1)(D);

(ii) contact information for the property owner's casualty insurance carrier, sec. 27-32(a)(1)(E);

(iii) "the name and mailing address for each principal officer, director, general partner, trustee, manager, member, or other person charged with the operation, control, or management of the entity," sec. 27-32(a)(3);

(iv) "the location of business records pertaining to the rental property," sec. 27-32(a)(4);

(v) "a copy of the owner's current driver's license or other government-issued personal identification card containing a photograph of the owner, if the owner is a natural person," sec. 27-32(a)(5); and

(vi) "a list of all businesses . . .operating out of the property and offering goods or services to persons residing at or visiting the property," sec. 27-32(a)(6).

82.     The information required by these sections has no rational nexus to Chapter 27's purpose. These items of business and personal information are protected from disclosure by the property owner's expectation of privacy pursuant to the *Fourth* and *Fourteenth Amendments*.

83.    Requiring the property owner to submit the application before a property may be leased creates an unconstitutional condition to the property owner's constitutionally protected right, pursuant to the Unconstitutional Conditions Doctrine and otherwise, to engage in the lawful business of leasing private property.

84.    Compelling the property owner to provide the information required on the registration application violates the property owner's *First Amendment* right to protection against compelled speech.

85.    Sections 27-30(a) and (c), 27-31, 27-32(a)(1)(D) and (E), and 27-32(a)(3), (4), (5), (6), and (8) are the subject of this Count One.

> COUNT TWO: Chapter 27 requires the property owner to submit publicly to the City, in connection with registration of a single dwelling unit rental property, an affidavit and a self-inspection form in violation of the property owner's *Fifth* and *Fourteenth Amendments* right to protection from self-incrimination.

86.    The affidavit requires the property owner to provide a sworn statement as to certain legal issues about which the property owner is not qualified to comment. For example, whether a property's current operation complies with the City's zoning ordinance is not a question which can be fairly asked of or answered by a non-lawyer or even many, if not most, lawyers.

87.    The self-inspection form requires the property owner to report via a checklist—based upon a recent inspection of the property—on the condition of the property's interior and exterior in specified categories. Neither the property owner nor its agent is likely to have the requisite qualifications or expertise on these matters.

88.    Requiring the property owner to submit the affidavit and the self-inspection form before a property may be leased creates an unconstitutional condition to the property

owner's constitutionally protected right, pursuant to the Unconstitutional Conditions Doctrine and otherwise, to engage in the lawful business of leasing private property.

89.     Compelling the property owner to provide the information required by the affidavit and self-inspection form violates the property owner's *First Amendment* right to protection against compelled speech.

90.     Section 27-32(b) is the subject of this Count Two.

> *COUNT THREE:* Chapter 27's requirement that the property owner submit publicly to the City, in connection with registration of a single dwelling unit rental property, "any additional information . . .that the director deems necessary" violates the property owner's *Fifth* and *Fourteenth Amendments* rights to due process and equal protection.

91.     Section 27-32(a)(8) authorizes the City to require from the registering property owner "any additional information. . .that the director deems necessary to aid in the determination of whether the registration application will be deemed complete."

92.     This provision is an open invitation to requiring production by the property owner of privacy-protected personal information in violation of the *Fourth Amendment*. Further, section 27-32(a)(8) is devoid of standards or criteria governing what additional information may be requested. As a result, the "additional information" required from one property owner can be different from that required from other property owners in violation of the *Fourteenth Amendment*'s equal protection requirement.

93.     Sections 27-5, 27-32(a)(8), 27-38(b)(10), and 27-42 are the subject of this Count Three.

> COUNT FOUR: Chapter 27's property registration requires the owner of a single dwelling unit rental property to maintain at a location in the City, and to provide access by the City to, certain business records and personal information in violation of the property owner's *First, Fourth, Fifth,* and *Fourteenth Amendments* rights to freedom of speech, privacy, and protection from unlawful search and seizure.

94.     Plaintiff incorporates by this reference all of the preceding paragraphs as if fully set forth herein.

95.     Sections 27-38 and 27-32(a)(4) require that certain business records of the property owner be kept physically within the City of Dallas and be made available to the City upon request. The information in these business records as well as the records themselves are property—for example, "leases . . .applicable to the property"—subject to protection within the property owner's expectation of privacy. This business records requirement violates the *Fourth* and *Fourteenth Amendments* which protect the citizen's right of privacy and prohibit search without due process. In addition, certain records required by section 27-38 to be maintained by the property owner have no rational nexus to Chapter 27's purpose.

96.     Sections 27-32(a)(4), and 27-38(a) and (b) are the subjects of this Count Four.

> COUNT FIVE:   The City's inconsistent interpretation and application of Chapter 27's minimum property standards results in erratic and ineffective communications with, and inequitable fines and penalties imposed upon, property owners in violation of their *Fifth* and *Fourteenth Amendments* rights to due process and equal protection.

97.     Plaintiff incorporates by this reference all of the preceding paragraphs as if fully set forth herein.

98.    The City's interpretation and application of the minimum property standards set forth in sections 27-5 and 27-42 are rife with procedural and substantive inconsistencies. The lack of uniformity produced by repeated inspections of a property by different inspectors results in excessively expensive and inequitable code enforcement, where the property owner is compelled to guess about correct steps to achieve Code compliance and then bears the brunt of unequal citations and fines.

99.    Chapter 27's failure to require specificity in a notice of violation deprives the property owner of notice and an opportunity to cure the violation, and thereby constitutes a violation of due process guaranteed by the *Fifth* and *Fourteenth Amendments*.

100.    Variations among inspectors are understandable and unavoidable, depending in part on an inspector's expertise or particular interests. Inequity arises, however, when the same "wrong" is identified by one inspector as a violation at a particular property but not a violation by a different inspector at some other property. This difference in outcomes constitutes a denial of equal protection in violation of the *Fourteenth Amendment*.

101.    Sections 27-4, 27-5, 27-11, and 27-42 are the subjects of this Count Five.

*COUNT SIX*: The warrant authorizations in Chapter 27 are devoid of procedural substance regarding notice to and participation by the property owner in the warrant issuance process. Consequently, such warrants cannot constitute constitutionally required pre-compliance review, and issuance of such warrants violates a property owner's *Fourth, Fifth,* and *Fourteenth Amendments* rights to privacy, due process, and equal protection.

102.    Plaintiff incorporates by this reference all of the preceding paragraphs as if fully set forth herein.

103.    Chapter 27 has three provisions regarding court orders for access: section 27-3.1(c)(1) . . . section 27-5(b) authorizes an administrative search warrant for an interior or exterior inspection of the property itself; and, section 27-38(a) authorizes issuance of a court order to inspect a property owner's business records. Beyond single sentences in each, these sections provide no guidance as to which court can issue an order, what hearing is required, or what prior notice is required for that hearing. Participation by the property owner in the hearing process is treated as a nullity. As a result, the property owner is required to produce private data or "allow" inspection without an effective opportunity for pre-compliance review. Further, the property owner's compelled disclosure of private information as part of a property's registration—which registration is itself a precondition to renting the property—creates an unconstitutional condition to the property owner's constitutionally protected right, pursuant to the Unconstitutional Conditions Doctrine and otherwise, to engage in the lawful business of leasing private property. These omissions and deficiencies, individually and collectively, violate the property owner's *Fourth, Fifth,* and *Fourteenth Amendment* rights to protection from unlawful search, due process, and equal protection.

104.    Sections 27-3.1(c)(1), 25-5(a) and (b), and 27-38(a) are the subjects of this Count Six.

> COUNT SEVEN: (i) Defining a violation or offense as recurring daily and thereby allowing imposition of a daily fine or penalty, (ii) failing to delineate standards and criteria for prosecuting violations as civil and/or criminal, and (iii) the undue criminalization of civil wrongs—these components of Chapter 27, singly or in tandem, violate a property owner's rights under the *Fifth, Eighth,* and *Fourteenth Amendments* to due process, equal protection, and freedom from excessive fines.

105.    Plaintiff incorporates by this reference all of the preceding paragraphs as if fully set forth herein.

106.    Chapter 27's provisions for civil and criminal violations, penalties, and fines are a convoluted and disorderly conjunction of notions regarding responsibility, liability, fines, penalties, and mental state,[69] resulting in violation of a property owner's rights under the *Fifth, Eighth,* and *Fourteenth Amendments.*

107.    The "fines" for criminal offenses and the "administrative penalties" for civil offenses are treated separately. The fine for a criminal conviction—not less than $150 for certain violations and not less than $500 for others, for a first conviction—can be doubled or trebled if repeated within prescribed time periods.[70] In contrast, a civil penalty is "not to exceed $1,000 for each day during which the violation is committed, or permitted."[71] Given the fact that, for example, a notice of violation can be dated the first but not mailed until the10th and not received by the property owner until the 17th, compounding a civil penalty daily even before the property owner knows the violation exists is an excessive fine in violation of the *Eighth Amendment.*

---

[69] Sec. 27-4(c) and its reference to Dallas City Code sec. 1-5.1 titled "Culpable Mental State."
[70] Sec. 27-4(b)(3).
[71] Sec. 27-4(d).

108.    Plaintiff does not dispute that Chapter 27's minimum property standards in section 27-11 are established and widely used in the property industry. The problem in Dallas is that under Chapter 27 the same violation can be cited as a criminal matter for one property and a civil matter for another property. This creates fundamental unfairness in applying the standards, and that unfairness is a denial of equal protection required by the *Fourteenth Amendment.*

109.    The fact that certain Chapter 27 violations can be "prosecuted" as criminal violations, with all the consequential harm that such a conviction can cause, produces an excessive penalty in violation of the *Eighth Amendment.* For example, if a tenant piles trash for pick up too far in advance of the designated date for that neighborhood, the City can prosecute the property owner for a criminal offense he knew nothing about until days or weeks after it occurred. Or, an inspector can determine that certain electrical wiring, while not a matter of health or safety, is not code compliant. The property owner might have known about the wiring situation but considered it code compliant. The outcome of these and many similar disputes, which in essence are civil wrongs, can be a criminal conviction, thereby subjecting the property owner to undue risks for breach of a loan covenant, uninsurability or increased insurance premium, and/or prompt denial of a loan application because of a criminal record. These and other risks established by the architecture of Chapter 27 create excessive fines and cruel and unusual punishment in violation of the *Eighth Amendment.*

110.    This intentional overlapping of civil and criminal violations, without differentiation as to their prosecution and sometimes even their penalty, creates an insurmountable vagueness deficiency for these Chapter 27 provisions. The ordinance's

failing to give fair notice of the conduct being punished, and its absence of standards thereby inviting arbitrary enforcement, are constitutionally prohibited.

111.    Sections 27-4(b)(3), (c), and (d), and 27-11 are the subject of this Count Seven.

> COUNT EIGHT: Chapter 27's omission of any statement enunciating the property owner's right to a jury trial in civil and criminal proceedings, as provided under Texas law, creates an undue risk of depriving that owner of its Seventh Amendment right to trial by jury.

112.    Chapter 27 fails to enunciate a property owner's right to a jury trial in  civil and criminal proceedings where Chapter 27 violations and other Chapter 27-related matters are contested. For a property owner to be fully protected in exercising its Seventh Amendment right to trial by jury, as provided by Texas law, that right is best stated in the text of Chapter 27 itself.

> COUNT NINE: Violation of 42 U.S.C. § 1983: The unconstitutional provisions of Chapter 27 deprive property owners in Dallas, Texas, of rights, privileges, and immunities secured by the United States Constitution and federal laws.

113.    Plaintiff incorporates by this reference all of the preceding paragraphs as if fully set forth herein.

114.    The City of Dallas was acting under color of law when it passed Chapter 27, and all agents of the City of Dallas attempting to effectuate or enforce Chapter 27 are, and will be, acting under the color of law as shown, for example, by the Notice of Violation sent to MA LEG PARTNERS 1 by the City.[72]

---

[72] See ¶ 22 supra.

115.    Chapter 27 has deprived Plaintiff, and subjects Plaintiff to future deprivation, of rights secured by the Constitution and federal law. Accordingly, Plaintiff is entitled to a declaration that the sections of Chapter 27 identified herein are unconstitutional, and to injunctive relief both prohibiting the effectuation and enforcement of those identified sections and remedying the discriminatory effects resulting from the enactment, effectuation, and enforcement of Chapter 27. Further, Plaintiff is entitled to recover damages suffered as a result of the enactment, effectuation, and enforcement of Chapter

## V. DECLARATORY JUDGMENT.

116.    Plaintiff incorporates by this reference all of the preceding paragraphs as if fully set forth herein.

117.    Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 and FED. R. CIV. P. 57, declaring that certain Chapter 27 provisions and the City's policies, practices, and actions enforcing those provisions, as identified hereinabove, have violated and continue to violate Plaintiff's constitutional rights, as referenced and specified herein, and therefore must be declared unconstitutional.

118.    The declaratory judgment sought by Plaintiff will serve a useful purpose in clarifying and settling the legal relations at issue herein, and will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to this proceeding. Further, granting this declaratory relief to Plaintiff will resolve elements of this dispute and will prevent the City from unlawfully using sections of Chapter 27 to defeat others' constitutional rights.

## VI. ATTORNEYS' FEES.

119.    Plaintiff incorporates by this reference all of the preceding paragraphs as if fully set forth herein.

120.    As a result of the City's actions, Plaintiff has been required to obtain legal counsel to bring this suit, and has agreed to pay reasonable and necessary attorney's fees and costs. Pursuant to 28 U.S.C. §§ 2201 *et seq.* and 42 U.S.C. § 1988(b), Plaintiff seeks recovery of those fees and expenses for the legal services rendered in bringing this suit and obtaining the relief sought herein.

## VII. JURY DEMAND

121.    Plaintiff requests a jury trial to the extent allowed on issues set forth herein.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff MA LEG PARTNERS 1 respectfully requests that this Court, upon notice and hearing, enter judgment in favor of MA LEG PARTNERS 1 and against the City of Dallas for the following:

(i) a declaration invalidating as unconstitutional and otherwise contrary to applicable federal and state laws, as applicable, the provisions of Chapter 27 identified hereinabove;

(ii) a permanent injunction prohibiting the enforcement or threatened enforcement of Chapter 27.

(iii)   an award of reasonable attorney's fees and expenses incurred in this suit;

(iv)   an award of costs of suit; and

(v)   such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

Dated: January 28, 2019

/s/ Richard B. Schiro
Richard B. Schiro, Esq.
State Bar No. 17750600
Greg E. Butts
State Bar No. 00790409
Law Offices Of Richard B. Schiro
2706 Fairmount Street
Dallas, Texas 75201
rbschiro@schirolaw.com
gebutts@schirolaw.com
(214) 521-4994 (telephone)
(214) 521-3838 (facsimile
ATTORNEYS FOR PLAINTIFF
MA LEG PARTNERS 1