UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MA LEG PARTNERS 1, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 3:19-CV-00219-X |
| v. | § § | |
| CITY OF DALLAS, | § § | |
| *Defendant.* | § § § § | |

# MEMORANDUM OPINION AND ORDER

The City of Dallas regulates rental properties by requiring applications and providing for inspections. When MA LEG Partners 1 (MA LEG) received a notice of violation for failing to provide an application for a rental property, it sued challenging the constitutionality of the ordinance under the First, Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendments and bringing a section 1983 claim, and seeking declaratory and injunctive relief. The City filed a motion to dismiss for lack of jurisdiction (Doc. No. 10) and a motion to dismiss for failure to state a claim (Doc. No. 8). The motions are fully briefed. For the reasons explained below, MA LEG lacks standing and the Court lacks jurisdiction. The Court hereby **GRANTS** the City's motion to dismiss for lack of jurisdiction and **DISMISSES WITHOUT PREJUDICE** MA LEG's claims. The Court **DISMISSES AS MOOT** the City's motion to dismiss for failure to state a claim.

1

## I. Factual Background

The City adopted an ordinance in 2016 that regulates rental properties. Among other things, the ordinance requires rental property owners to complete an application, attach an affidavit, and pay a registration fee. MA LEG alleges it received a notice of violation in 2018 for failure to register. MA LEG responded by filing suit to challenge the constitutionality of the ordinance.

## II. Motion to Dismiss Standard

The City filed motions to dismiss both for lack of jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). The City contends the Court lacks jurisdiction because MA LEG lacks standing. Standing under Article III of the Constitution is jurisdictional, such that the Court must address it before considering the merits of a plaintiff's claims.[1] Unlike a 12(b)(6) motion, the Court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case on a Rule 12(b)(1) motion.[2] A court must dismiss the case if it "lacks the statutory or constitutional power to adjudicate the case."[3] And the burden is on the party who seeks federal jurisdiction to clearly "allege facts demonstrating that [it] is a proper party to invoke the judicial resolution of the dispute."[4]

Standing requires that a plaintiff establish, for each claim, "(1) that the plaintiff have suffered an 'injury in fact—an invasion of a legally protected interest

---

[1] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 247–48 (5th Cir. 2008).

[2] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

[3] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).

[4] *United States v. Hays*, 515 U.S. 737, 743 (1995) (quoting *Warth v. Seldin*, 422 U.S. 490, 490 (1975)) (alteration added).

which is (a) concrete and particularized, and (b) actual or imminent'; (2) that there is 'a causal connection between the injury and the conduct complained of'; and (3) that the injury is likely to be redressed by a favorable decision."[5]

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor."[6] To survive a motion to dismiss, MA LEG must allege enough facts "to state a claim to relief that is plausible on its face."[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[9] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[10]

III.

MA LEG brings nine enumerated claims and requests for declaratory and injunctive relief. The City argues that MA LEG has suffered no injury and failed to

---

[5] *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

[6] *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2012)).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[9] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[10] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. Rule 8(a)(2)).

3

state a claim. The Court addresses standing first and then addresses each claim in turn.

A. Standing

The City argues that because MA LEG has only received a notice of violation, it lacks a concrete and particularized injury sufficient to sue. The Court disagrees. As the Supreme Court explained in *Babbitt v. United Farm Works Nat'l Union*,

> A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. But one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending that is enough.[11]

If the City were right, pre-enforcement challenges to the constitutionality of statutes and ordinances could never occur. But they often do. In fact, the City has brought such actions against Texas to attempt to enjoin state law before it took effect.[12] And those actions seek injunctive relief to prevent future constitutional violations, not just damages for past violations. MA LEG has done likewise here. And the City has not indicated in briefing or the hearing that it will not enforce the ordinance against MA LEG (and the notice of violation indicates the opposite). The Court disagrees with the City's global assertion of lack of standing and jurisdiction in this posture where the first step of enforcement as to the plaintiff has begun. But the Court must assess standing count by count, so that is not the end of the matter.

---

[11] 442 U.S. 289, 298 (1979).

[12] *See City of El Cenizo v. State*, 264 F. Supp. 3d 744, 755 (W.D. Tex. 2017) (ruling on pre-enforcement preliminary injunction motion from City of Dallas), *aff'd in part, vacated in part sub nom. City of El Cenizo, Texas v. Texas*, 885 F.3d 332 (5th Cir. 2018), *withdrawn from bound volume, opinion withdrawn and superseded*, 890 F.3d 164 (5th Cir. 2018), *and aff'd in part, vacated in part sub nom. City of El Cenizo, Texas v. Texas*, 890 F.3d 164 (5th Cir. 2018).

B.     Count One: Reasonable Expectation of Privacy

MA LEG complains that Chapter 27's application process requires the disclosure of the following information it believes to be constitutionally protected from disclosure:

(i) Contact information for the holder of any deed of trust or mortgage lien on the property, sec. 27-32(a)(1)(D);
(ii) Contact information for the property owner's casualty insurance carrier, sec. 27-32(a)(1)(E);
(iii) "the name and mailing address for each principal officer, director, general partner, trustee, manager, member, or other person charged with the operation, control, or management of the entity," sec. 27-32(a)(3);
(iv) "the location of business records pertaining to the rental property," sec. 27-32(a)(4);
(v) "a copy of the owner's current driver's license or other government-issued personal identification card containing a photograph of the owner, if the owner is a natural person," sec. 27-32(a)(5); and
(vi) "a list of businesses . . . operating out of the property and offering goods or services to persons residing at or visiting the property," sec. 27-32(a)(6). (Doc. No. 1 at 27).

MA LEG's first count contends its expectation of privacy in this information is protected by the Fourth and Fourteenth Amendments. The City argues, among other things, that MA LEG lacks standing because it has no reasonable expectation of privacy in the information the application calls for.

The Court agrees with the City that MA LEG lacks a reasonable expectation of privacy in the requested records.[13] Items (i) (relating to deed holders and mortgage

---

[13] While the City frames this as both a standing issue and a merits issue, it goes to standing. *See Williams v. Kunze*, 806 F.2d 594, 599 (5th Cir. 1986) ("Unless the shareholder, officer or employee can demonstrate a legitimate and reasonable expectation of privacy in the records seized, he lacks standing to challenge the search and seizure.").

5

holders), (ii) (relating to insurance carriers), and (vi) (relating to businesses at the property) concern records of other individuals. One generally does not have standing to assert Fourth Amendment rights of others but only has standing to assert their personal stake if the rights of others affect them.[14] MA LEG contends that its personal stake is that information such as deed holders, insurance carriers, and businesses are the types of sensitive business information MA LEG takes steps to keep private. The Court holds that, while MA LEG may have a personal stake in these types of information, other government regulatory frameworks require its disclosure, thus destroying any reasonable expectation of privacy. And caselaw regarding business entities indicates there is no reasonable expectation of privacy in information regarding a business operating at a rental property.

Regarding contact information of deed holders and mortgage holders, section 214.001 of the Texas Local Government Code requires the City in various circumstances to inform lienholders and mortgagees of violations of ordinances concerning substandard buildings. And MA LEG conceded at oral argument that the City would have an interest in notifying mortgage holders and deed holders of City violations because of the potential for the City to abate a nuisance at the property and destroy the holder's financial stake before they had notice to fix the problems. Information regarding the holder of the deed or mortgage is necessary for the City to perform that function and already required by state law. Regarding insurance, the

---

[14] "As a general rule, 'Fourth Amendment rights are personal[,]' and 'may not be vicariously asserted.'" *United States v. Escamilla*, 852 F.3d 474, 485 (5th Cir. 2017) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 186 (5th Cir. 2018) (holding that officials must have a sufficient "personal stake" regarding the impact of a challenged law on third parties in order to have standing to challenge the law).

Fifth Circuit has held that a motorist has no privacy right to proof of insurance.[15] In addition, Texas rules of procedure already require the disclosure of such insurance information if there is pending litigation.[16] It should also be noted that the ordinance only requests the contact information of MA LEG's casualty insurance carrier and not any detailed information like policy limits or the scope of overage.

Regarding businesses operating at the rental property, business information can often be in the public domain, such that there is no reasonable expectation of privacy.[17] For example, courts have concluded there is no reasonable expectation of privacy in a public store.[18] To the extent MA LEG contends the disclosure of the name of the business itself is so secretive that it has not been disclosed and the public is not entitled to know the name, MA LEG has not made a sufficient showing to meet its burden of proof[19] as to its reasonable expectation of privacy that confers jurisdiction on the Court. Therefore, MA LEG cannot assert a reasonable expectation of privacy in the information of a deed holder, mortgage holder, insurer, or business operating

---

[15] *United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008).

[16] Texas Rule of Civil Procedure 192.3(f) provides:

> Except as otherwise provided by law, a party may obtain discovery of the existence and contents of any indemnity or insurance agreement under which any person may be liable to satisfy part or all of a judgment rendered in the action or to indemnify or reimburse for payments made to satisfy the judgment. Information concerning the indemnity or insurance agreement is not by reason of disclosure admissible in evidence at trial.

[17] *Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.").

[18] *See Maryland v. Macon*, 472 U.S. 463, 469 (1985) (finding that there is no reasonable expectation of privacy in areas of a business where the public is invited to enter and to transact business); *United States v. Watson*, 244 F. App'x 484, 488 (3d Cir. 2007) (finding no expectation of privacy identified in warrantless entry of public store).

[19] While this case is on a motion to dismiss, it is a motion to dismiss for lack of jurisdiction. That procedural rule requires the Court to, if necessary, resolve disputed jurisdictional facts to determine as a matter of law if the Court has the power to hear the case. MA LEG has not brought forth evidence to bolster its conclusory allegation that this information is not public.

from the rental property.

Item (iii) involves the officers and directors of the entity controlling the property and their business address. But this information is largely publicly available, as MA LEG admits in briefing. And this admission is logical. When forming an LLC, as MA LEG did here, Texas law requires on the registration forms the disclosure of the members of the LLC.[20] The Texas application for registering an LLC likewise contains information for the LLC members (referred to as "governing persons").[21] MA LEG complied with that request when forming its LLC, and this member information is publicly available on websites of the Texas Secretary of State and Comptroller. As a result, there is no constitutionally protected privacy interest in information such as this that is in the public domain.[22]

Item (iv) involves the location of business records pertaining to the property. MA LEG cites to an out-of-district opinion in *Gem Financial Services v. City of New York*, holding that "[u]nder *Katz*, this property-based expectation of privacy extends to 'private' business records containing 'the kind of commercially sensitive

---

[20] *See* TEX. BUS. ORGS. CODE § 101.103(a) ("In connection with the formation of a company, a person becomes a member of the company on the date the company is formed if the person is named as an initial member in the company's certificate of formation."). To the extent MA LEG is claiming there are new members to the LLC not disclosed in public filings, MA LEG has failed to make such allegations sufficient to invoke the Court's jurisdiction as to this claim. *Hays*, 515 U.S. 743.

[21] Texas Secretary of State, Certificate of Formation—Limited Liability Company, Form 205, *at* https://www.sos.state.tx.us/corp/forms/205_boc.pdf (last visited Mar. 4, 2020).

[22] *See Maryland v. Macon*, 472 U.S. 463, 469 (1985) (finding that there is no reasonable expectation of privacy in areas of a business where the public is invited to enter and to transact business); *United States v. Watson*, 244 F. App'x 484, 488 (3d Cir. 2007) (finding no expectation of privacy identified in warrantless entry of public store); *Stamm v. Cty. of Cheyenne*, 326 F. Supp. 3d 832, 849 (D. Neb. 2018) ("Certainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record.") (quoting *Phillips v. Bailey*, 337 F. Supp. 2d 804, 806 (W.D. Va. 2004)).

information' that society does not 'ordinarily . . . expect to [be] disclose[d].'"[23] But *Gem Financial* went on to recognize that business records held pursuant to a government regulatory framework have no reasonable expectation of privacy.[24] And the language MA LEG quotes from only relates to commercially sensitive information (such as trade secrets), and MA LEG makes no case that the location of where records are kept is commercially sensitive. For example, disclosing that the Coca Cola recipe[25] is kept at 1 Coca Cola Plaza NW Atlanta, GA 30313 is not the same as disclosing the actual recipe.

Item (v) requests the official recording information for the owner's deed and any other instruments evidencing ownership of the rental property being registered. While MA LEG admits that the "'official recording information' . . . presumably refers to matters of public record," it alleges "'any other instruments evidencing ownership of the rental property' may not be, and need not be public."[26] But this vague statement is insufficient to allege a concrete injury required for standing.

MA LEG raised Fourteenth Amendment privacy interests with respect to the same information requests. But when the City briefed the issue and explained MA

---

[23] 298 F.Supp.3d 464, 479–80 (E.D.N.Y. 2018) (quoting *Patel v. City of Los Angeles*, 738 F.3d 1058, 1062 (9th Cir. 2013), *aff'd sub nom. City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443 (2015).

[24] *Id*. at 480. *See also Donovan v. Mehlenbacher*, 652 F.2d 228, 231 (2d Cir. 1981) (holding that "records required to be kept pursuant to valid regulatory programs have a 'public aspect' for purposes of constitutional analysis, and thus are not private papers entitled to the protection of the [F]ourth or [F]ifth amendments").

[25] The Court is referring to the recipe for Coca Cola classic. The recipe for Coca Cola II (also known as New Coke) introduced in 1985 largely proved to be a disaster. No one but Stranger Things fans seek to resurrect it.

[26] MA LEG's Response to City of Dallas's Motion to Dismiss for Lack of Subject Matter Jurisdiction at p.10 (quoting DALLAS, TEX., CITY OF DALLAS, TEX. CODE OF ORDINANCES ch. 27, art. VII, § 27-32(a)(5)) [Doc. No. 15].

LEG failed to identify any privacy interest protected by the Fourteenth Amendment, (Doc. No. 11 at 11), MA LEG never responded with a Fourteenth Amendment privacy argument (Doc. No. 15). However, based on representations made by MA LEG's counsel in the hearing held before this Court on March 3, 2020, the Court construes MA LEG's Fourth Amendment arguments as also raising a Fourteenth Amendment privacy claim under the penumbras and emanations of the due process clause as to these records. The same arguments above regarding the Fourteenth Amendment also explain why MA LEG does not have a reasonable expectation of privacy under the Fourteenth Amendment to these records. Accordingly, MA LEG has not shown a concrete injury with respect to a Fourteenth Amendment privacy interest.[27]

C. Count One: Compelled Speech

MA LEG's First Amendment argument in Count One is that the required submission of information is unconstitutional compelled speech. It relies on *Associated Builders and Contractors of Southeast Texas v. Rung*, where the court held unconstitutional federal labor regulations requiring federal contractors and subcontractors to report for public disclosure alleged violations of federal labor laws.[28] The court found "[t]he Executive Order's unprecedented requirement . . . compels contractors to engage in public speech on matters of considerable controversy adversely affecting their public reputations and thereby infringing on the contractors' rights under the First Amendment."[29] Here, the requested information is not for

---

[27] The City also argued that the application is not a "search" within the meaning of the Fourteenth Amendment. Because the Court finds no reasonable expectation of privacy to the requested information, it need not determine whether the application is a search.

[28] No. 1:16-CV-425, 2016 WL 8188655, at *8 (E.D. Tex. Oct. 24, 2016).

[29] *Id.*

10

publication, nor is it a matter of considerable controversy, such as compelling political, ideological, or religious speech. If the City cannot require applications in this context because of the prohibition on compelled speech, it is difficult to see how any government could have a regulatory system that requires applications.

### D. Count One: Unconstitutional Conditions

The Unconstitutional Conditions Doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them.[30] MA LEG contends in Count One[31] that the City's application requirement, affidavit, and self-inspection forms violate the Unconstitutional Conditions Doctrine by requiring the owner to submit the required information to engage in leasing private property. But MA LEG must show that the City conditioned a benefit on MA LEG waiving its constitutional rights. The Court has held that there is no constitutional protection here (or, more precisely, that MA LEG has failed to make such a showing). As a result, there is no unconstitutional condition defect that MA LEG has standing to sue over.

### E. Count One: Equal Protection

MA LEG's final argument under Count One is that the following in the ordinance violate the Equal Protection Clause of the Fourteenth Amendment: (1) the requirement to register and apply; (2) inequitable code enforcement policies and practices; and (3) the City director having unilateral authority to require information

---

[30] *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013).

[31] MA LEG also made this contention in Count Two, which involved an argument that Chapter 27 violated the Fifth and Fourteenth Amendment rights against self incrimination. But MA LEG withdrew that count in its response to the City's motion to dismiss for lack of standing.

11

and records.

> [T]o show Article III standing for constitutionally-protected equal protection claims, a plaintiff must allege that (1) there exists a reasonable likelihood that the plaintiff is in the disadvantaged group, (2) there exists a government-erected barrier, and (3) the barrier causes members of one group to be treated differently from members of the other group.[32]

But MA LEG's complaint never claims the company is in a disadvantaged group or that another similarly situated group was treated differently. As a result, MA LEG has not shown an imminent, concrete injury that is actionable under the Equal Protection Clause. Overall on Count One, because MA LEG has not shown a Fourth or Fourteenth Amendment privacy interest or standing under compelled speech, unconstitutional conditions, or the Equal Protection Clause, the Court lacks jurisdiction over Count One. The Court **GRANTS** the City's motion to dismiss for lack of jurisdiction as to Count One and **DISMISSES WITHOUT PREJUDICE** the claim.

### F. Counts Three Through Eight

Counts Three through Eight also suffer from a lack of standing. In Count Three, MA LEG alleges that Chapter 27 requires that the owner to submit with registration of a single dwelling unit "any additional information . . . that the director deems necessary."[33] But MA LEG never alleges the City requested additional information beyond what the application and affidavit require. As a result, MA LEG has not alleged an imminent, concrete injury with respect to Count Three. The Court

---

[32] *Comer v. Cisneros*, 37 F.3d 775, 793 (2d Cir. 1994).

[33] MA LEG's Complaint ¶90 (quoting DALLAS, TEX., CITY OF DALLAS, TEX. CODE OF ORDINANCES ch. 27, art. VII, § 27-32(a)(8)) [Doc. No. 1].

**GRANTS** the City's motion to dismiss for lack of jurisdiction as to Count Three and **DISMISSES WITHOUT PREJUDICE** the claim.

In Count Four, MA LEG contends that the City's requirements regarding rental property business records violate its constitutional rights. But MA LEG never pled that it received a notice of violation or citation for violations of these provisions. As a result, MA LEG has not alleged an imminent, concrete injury with respect to Count Four. The Court **GRANTS** the City's motion to dismiss for lack of jurisdiction as to Count Four and **DISMISSES WITHOUT PREJUDICE** the claim.

Count Five alleges "the City's inconsistent interpretation and application of Chapter 27's minimum property standards results in in erratic and ineffective communications with, and inequitable fines and penalties imposed upon, property owners in violation of their Fifth and Fourteenth Amendments rights to due process and equal protection."[34] Specifically, MA LEG warns about the harm that could arise from repeated inspections on a property by different inspectors. But this is speculative. Indeed, MA LEG never pled that it suffered from disparate treatment under the hands of different inspectors (or received a fine, penalty, or inspection at all). As a result, MA LEG has not alleged an imminent, concrete injury with respect to Count Five. The Court **GRANTS** the City's motion to dismiss for lack of jurisdiction as to Count Five and **DISMISSES WITHOUT PREJUDICE** the claim.

Count Six alleges that Chapter 27 lacks sufficient procedural substance regarding notice to and participation by the property owner in the warrant issuance

---

[34] MA LEG's Complaint ¶96 [Doc. No. 1].

13

process. But MA LEG never alleged any injury as a result of the City's warrant issuance process or that the City even sought a warrant against it. As a result, MA LEG has not alleged an imminent, concrete injury with respect to Count Six. The Court **GRANTS** the City's motion to dismiss for lack of jurisdiction as to Count Six and **DISMISSES WITHOUT PREJUDICE** the claim.

In Count Seven, MA LEG alleged the City's imposition of fines allowed is unconstitutional. But MA LEG never pled that it received notice of a fine, a demand for payment, or a citation from the City. As a result, MA LEG has not alleged an imminent, concrete injury with respect to Count Seven. The Court **GRANTS** the City's motion to dismiss for lack of jurisdiction as to Count Seven and **DISMISSES WITHOUT PREJUDICE** the claim.

In Count Eight, MA LEG complains about depriving an owner of a jury trial. But MA LEG has not pled that it is facing an enforcement action, such that a non-jury trial is imminent. As a result, MA LEG has not alleged an imminent, concrete injury with respect to Count Eight.[35] The Court **GRANTS** the City's motion to dismiss for lack of jurisdiction as to Count Eight and **DISMISSES WITHOUT PREJUDICE** the claim.[36]

### G. 1983 Claim

Ma LEG's final enumerated claim is under 42 U.S.C. § 1983 for deprivation of

---

[35] "Allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

[36] The City also argues that a case that MA LEG attached to a response was a state court proceeding involving a constitutional challenge to the ordinance and triggers *Younger* abstention. But because the Court holds that MA LEG lacks standing for any of its claims and has no power to hear the case, the Court need not reach the abstention argument.

rights guaranteed by the Constitution and federal law. But section 1983 is not a freestanding guarantee of substantive rights. It is a procedural enforcement that safeguards rights granted under the Constitution or substantive federal law. As MA LEG lacks standing for any of its constitutional arguments, there can be no standing for a section 1983 claim. As a result, the Court **GRANTS** the City's motion to dismiss for lack of jurisdiction as to Count Nine and **DISMISSES WITHOUT PREJUDICE** the claim.

### H. Declaratory Judgment

MA LEG also requests the Court to declare the ordinance unconstitutional based on the arguments in its enumerated counts. The City argues that the federal Declaratory Judgment Act, like section 1983, creates no substantive rights and must be dismissed because MA LEG has no viable underlying claim. While this is a correct legal assertion, the City misses the point that the Declaratory Judgment Act does not waive sovereign immunity.[37] As a result, the Court **GRANTS** the City's motion to dismiss for lack of jurisdiction as to the request for declaratory relief and **DISMISSES WITHOUT PREJUDICE** the claim.

## IV. Conclusion

For these reasons, the Court **GRANTS** the City's motion to dismiss for lack of jurisdiction and **DISMISSES WITHOUT PREJUDICE** MA LEG's complaint. Because the Court lacks jurisdiction over the action, the Court **DISMISSES AS**

---

[37] *See, e.g., Okpalobi v. Foster*, 244 F.3d 405, 432 (5th Cir. 2001) (Higginbotham, J., concurring) ("Congress did not and could not have created a generic exception to the Eleventh Amendment for declaratory relief."); *Texas v. Ysleta del Sur Pueblo*, No. EP-17-CV-179-PRM, 2018 WL 7288032, at *12 (W.D. Tex. Aug. 27, 2018) (holding that the federal Declaratory Judgment Act is not a waiver of sovereign immunity).

**MOOT** the City's motion to dismiss for failure to state a claim.[38]

**IT IS SO ORDERED** this 4th day of March, 2020**.**

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[38] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.